All right. Counsel for Pellant. Mr. Valencia, you're going first. Yes. Yes, Judge. All right. Please state your name for the record. May it please the court. Chief Judge Rawlinson, Judge Schroeder, Judge Bress, I am Mark. I'm not the chief judge. I'm presiding, but I'm not the chief judge. My apologies. Thank you for the promotion. Welcome to Hawaii. I'm really happy that you agreed to hear this very important case. Just as an aside, if you have not gone on a hike here, Makapu'u Lighthouse, highly recommended. Just over a mile straight up paved all the way in a mile down. The views are absolutely breathtaking. All right. Thank you, counsel. You're welcome. So as I indicated, I'm Mark Valencia. And together with my associate Elaine Chow and my paralegal Paulette Alvarez, we have the honor and privilege of representing Dr. Naleen Andrade, the plaintiff appellant in this matter. And Dr. Andrade is also present in the courtroom. With the court's indulgence and permission, Elaine and I have divided up our time, eight minutes for me, seven for her. I'll address the issues of the statute of statute of limitations, the Rule 12 violation by the district court and the district court's unconstitutional indefinite stay of proceedings. Elaine will address the 1983 and 1985 claims and within those the issues of municipal liability and qualified immunity, along with the nonsubstantive joinder and denial of leave to amend. A lot of issues. Yes. Fundamental fairness and due process. That that's really what this appeal is about. And in this context, they mean giving someone an opportunity to present their case to an impartial fact finder. And Dr. Andrade was denied that opportunity at the very early stages of this case. And I just want to give you just a little background for context purposes. Dr. Andrade is from Hawaii on the Big Island. She grew up in the Kaikoura Church, which is at the heart of this dispute. She's a doctor, went to the University of Hawaii Hilo, went to the Johnny Burns School of Medicine here at the University of Hawaii. She did her clinical executive training at the Harvard School of Public Health. Counsel, was she a member of the church at the time these that these actions happened? Was she actually enrolled a member of the church? Yes, Judge Wallinson, she was a member and still is. She did she live in the community or did she come there to go to the church? It wasn't clear from the record if she actually lived in the community where the church was or if she came there to visit the church from time to time. What was her status? Judge Wallinson, she lives here on Oahu, travels to the Big Island on a regular basis. So just and and she actually grew up in that church. And not only that, but she has 50 of her ancestors who were buried in the cemetery on the church grounds, including her mother, father and grandparents. And visiting ancestral grave sites is a very important part of her culture. And that ties in with the First Amendment Reassociation issue. So how did she get here? This very distinguished member of the community who has devoted her life to helping underprivileged members of the community. She was invited to a meeting by the lawful officers of the church. Well, that's that's that's the crux of this case. It seems like that there was a dispute in in the church regarding who were the authorized leaders of the church. And it appears that Dr. Jackson, that said they were the authorized leaders and the other faction disagreed and precluded the competing faction from access to the church. Is that a fair characterization? That is fair. Yes, Judge. OK. And so. We do have this dispute, but at this stage of the proceedings, the factual allegations that we have made have to be deemed true. So the fact that these officers were appointed by a duly authorized bylaws meeting has to be accepted as true. And those officers invited Dr. Andrade and others to a meeting. She comes to the meeting. But before that meeting, the individual defendants, according to our complaint, conspired with Officer Cho to try and talk them out of it, telling them they would be trespassing. So clearly invested in one side of this dispute. It the record seems to reflect that the Dr. Andrade and others climbed a wall to access the property. They climbed a wall because the hostile takeover led by Mr. McCumber changed the locks. Right. So so they mean, yes, they had to climb the wall, but climbing a wall doesn't mean you're trespassing. Well, it's just it's just one of the facts that that's in the record. And I'm just wondering if the other leaders were authorized to have access. Why couldn't they change the locks back if they were authorized, if they were the authorized leaders? Why couldn't they change the locks back so that Dr. Andrade would have access? Judge Wallinson, I think they could have changed the locks after the fact, but they didn't know that the gate was locked until they arrived. This all happened very fast. But I mean, I guess just to get to the basis for the dismissal, most of the claims were dismissed as untimely because of a two year statute of limitations. The malicious prosecution claim was after some deliberation, I would say, was found to be not untimely. And but it was dismissed on other grounds for a failure to demonstrate a lack of probable cause or malice. And so where is the infirmity in the district court's ruling? Judge Bress, the district court's ruling is very unclear. So in 2017, he issued a very clear dismissal that said that the complaint was on untimely. And there's two aspects of the statute of limitations that apply. One is the the time period itself, which is two years. That's not in dispute based on the Hawaii personal injury statute. The other is the accrual date. So when does the clock start? And the Judge Watson's position in the 2017 order of dismissal said that the clock started when Dr. Andrade was charged with criminal trespass. And that's just not accurate. The clock started when her criminal charges were dismissed. And that's based on the HEC decision that we have relied on that talks about when a 1983 claim. So that gets you there with any claim that sounds in a malicious prosecution. But if the claim is essentially a First Amendment based claim, all that seemingly happened when she was locked out of the church and told to leave. Judge Bress, what the what the court says in HEC and actually this court's holding in Harvey v. Waldron is that the claim accrues when the party has a complete entitlement to relief. So in this case, she was not entitled to bring her cause of action until the criminal charge was dismissed because all of them are intertwined. The first even the First Amendment claim would be intertwined with the malicious prosecution claim. Yes, Judge Rawlinson, because the First Amendment claim involves freedom of association, for example, when Dr. Andrade was targeted and charged with criminal trespass, she was the only one charged and they targeted her for a reason. They viewed her as the leader. She was then afraid to come back because twice, actually, they went to meetings and they had not just the police, but the SWAT team for for the Kupuna. You know, Kupuna is the Hawaiian word for elderly grandparents and a bunch of elderly men and women. So they've been meeting in other places because of this chilling effect that this targeting of her had. And if she had no lawful authority to be on the property, she I don't believe she could file a complaint based on the First Amendment. So if she, for example, would have been convicted of criminal trespass, then she could not bring a First Amendment claim for denial of free association to attend these meetings because she had no lawful right to be there. So I don't think you can separate the First Amendment and malicious prosecution type claims here. And the court, what's unclear is the court's 2021 order says that the 1983 based malicious prosecution claims are not untimely. So what does that mean? So is the judge rule that count one is untimely except for malicious prosecution? So in 1983 is untimely? It's unclear. If you look at the response by the appellees, the county in particular, they had a full on section saying, hey, the claims are untimely. And we only touched on it, touched on it in our opening brief because we thought the district court had corrected himself. But the record's not clear. And I do think that the court should clarify this issue. You know, the selfish part of me does not want a published opinion if you're not going to rule in our favor. But the but the citizen part of me says, look, this is something that needs to be addressed so we don't have this kind of issue come up in the future. And if you look at the judge's 2017 order, he cites another district court case that basically says that heck, the portion of heck that talks about the accrual period starting when a criminal conviction is dismissed has been explicitly overruled. And that's just factually incorrect. All right, counsel, you've exceeded your time. I'll give you a minute for rebuttal. Thank you for this child. Please proceed, counsel, may it please the court. My name is Elaine Chow, and today I will address four reasons why the district court aired below. First, the district court aired in dismissing Dr. Andrade's 1983 claims in three ways. Number one, the district court made an affirmative determination that Officer Cho is entitled to qualified immunity at a motion to dismiss stage. Number two, the district court determined that Dr. Andrade failed to allege a claim against the county for municipal liability. And number three, the district court failed to accept the complaint allegations as true in evaluating the malicious prosecution claim. The second reason why the district court aired is because they failed to apply the elements of a 1985 claim. And they also and the district court also concluded that a 1983 claim is a prerequisite to a 1985 claim. What can I ask you, what is really at stake here? What what is the relief that you ultimately are seeking? So, Dr. Andrade, Officer Cho and the county, as well as the private defendants, deprived her of her ability to exercise her rights under the Constitution and specifically the First Amendment, the Fourth Amendment and the 14th Amendment.  And that what they did in terms of what is provided under the law, they violated Officer Cho acted under the color of state law. And by filing this police report. That that's that's what happened. He filed the police report, which set in motion this prosecution. He filed a police report, but he knew that there was exculpatory evidence that would have confirmed Dr. Andrade's right to be on the property, and therefore she should not have been charged criminal trespass. But the exculpatory evidence was was the evidence of authority documents. That's what you're pointing to. Yes. How does that how does that demonstrate that there wasn't a basis to submit the police report that Cho submitted? So Officer Cho, as well as the police chief, were provided copies with the evidence of authority and evidence of authority shows the officers shows the bylaws, which includes officers that were appointed by the church. And because Dr. Andrade was invited by those officers to be on the premises, she had a right to be on those premises. So she was not. In fact, wouldn't all of that be sorted out in court once the charges were brought, then that would be kind of evidence in defense, correct? That would be evidence in defense, but she should not have been charged in the first place because Officer Cho and the county knew that she had the right to be there. Well, what do you what what you're asking for? You don't want money. Or what you really want. It sounds as if what you really want is is is the court to recognize that you were in the right in this dispute over the church control. Not only that, we were in the right in terms of this church dispute, but the fact that she should not have been charged in the first place and the fact that she's not able to practice her religion and that she has to go to different locations in order to go to church. So it's it's a continuous violation of that started with this November 15, 2013 event. Counsel, if the statute of limitations had expired, does it matter what the district court ruled on the issue of qualified immunity? If the statute of limitations had expired on the claims that were brought. If the statute of limitations has expired, then it would not matter because the claim is not there. However, the statute of limitations in terms of the two year statute of limitations that has not expired for our claim, because the malicious prosecution claim is part of our 1983 claims. And the other basis for our 1983 claims were timely brought. If we disagree with you regarding whether or not the 1983 claims are part of the malicious prosecution claim, do you lose on the statute of limitations issue? We, I believe so, but in this case, they are so intertwined that I do not believe that they could be separated from the malicious prosecution claim. So your position is that a 1985 claim may survive, even if there's no section viable section 1983 claim. What case says that it's a Ninth Circuit case? We cited in our reply brief that is Life Insurance Company versus a rechart of 591 F2D 499, Ninth Circuit case 1979. You cited that in your reply brief? We cited it in the reply brief, correct. I mean, most of the defendants here are not public, they're not state actors. There's one that there's Cho, who was a state actor, but you can't bring a 1983 claim against private individuals absent some allegation of a conspiracy. And so I guess I come back to Judge Rollinson's question about how does this not rise and fall on the claims against Cho? Well, in that Life Insurance case, the district court dismissed the 1983 claim against insurance companies, but allowed the 1985 claim to survive, even though the 1983 claim was dismissed. Is your 1985 claim, in this case, predicated on the 1983 claim against insurance companies? Is it predicated on state action or private action? It is predicated on state action. But I thought the Life Insurance Company case only allowed the 1985 claims to survive against the individual defendants. That's correct. So then, but your answer was that the 1985 actions were against the state actors. So Life Insurance doesn't support that argument, does it? So the 1985 claim is against the private defendants, but they conspired with the state actors, and that is the basis for our 1985 claim. But what is the alleged conspiracy? The action here was Cho filing a false police report that set in motion an allegedly improper prosecution. So where is the, beyond that, where is the conspiracy? So beyond that, the private defendants actually knew what was going on in terms of the church dispute. So they conspired with Officer Cho in terms of arranging for the raid, including arranging for a SWAT team to be there and police officers to be at this place, when in fact, all of them knew that Dr. Andrade had a right to be on the premises. But that all happened well over two years before the claim was brought, right? So those claims have this entirely separate statute of limitations issue. Our position is that the two-year statute of limitations does not apply because there's a whole line of cases where the two-year statute of limitations applies to false arrests, but we are claiming that this is a malicious prosecution claim. And it does not run until her charges were dismissed. And because her charges against her were dismissed, that is fine. No, that's right. But then we're looking at the basis for the malicious prosecution claim. And the district court, there are probably different ways of approaching that, but the district court said, well, this is not malicious prosecution as pled because there was probable cause, which is not a particularly high standard. And there was a report that somebody was trespassing. Somebody had leapt over a wall. And I'm going to file a police report about that. Your argument is that, well, there was some exculpatory evidence that contradicted that. But I think our cases are fairly clear that that usually gets sorted out later. It has to be pretty powerful exculpatory evidence to suggest that the police report was filed without any sufficient basis. And that's where I'm struggling with this part of your case. It's correct that that's what the district court said, but that is why we are appealing and saying that there are plausible allegations in asserting a plausible claim for relief against Officer Cho in submitting a police report when he knew, he and the county knew that there was exculpatory evidence that she had the right to be on the premises. And therefore, they should not have arranged for all these police officers and SWAT team to be there and press charges against her when she had the right to be there. All right. Thank you, counsel. Thank you. We'll hear from the defendants. Ms. White, are you going first? No, excuse me. I believe counsel on... Oh, okay. Good morning. Good morning. Thank you. And may it please the court, Stephen Irimoto, Deputy Corporation Counsel on behalf of Appellees Darren Cho and County of Hawai'i. You know, as this court recognized, this case arose out of an extremely bitter dispute over the Kāʻi Koala Church that is ongoing almost a decade later. Officer Cho and the county are innocent bystanders that have been dragged into this on the basis of a garden variety police response to a report of traspassing. The core facts that are alleged by the appellant are very simple. And I can go through them. Officer Cho received a report that someone had entered the Kāʻi Koala Church grounds without permission. This is paragraph 79 of the first amended complaint. The church grounds were locked and appellant and others climbed over a rock wall to gain entry. This is paragraph 85. Officer Cho went to the church along with other officers. He interviewed members of the congregation about the reported trespass, prepared a police report and forwarded the police report to the county prosecutor. This is paragraph 79 and 82. There was no seizure. There was no search. There was no arrest. There's no allegation of harsh language. In fact, there does not even appear to be any allegation that Officer Cho has even spoken directly to the appellant. The trespassing charge against the appellant was ultimately dismissed. Yes. The opposing counsel represented that a SWAT team was called out. Do you agree with that? You know, that is the allegation and the court, I believe, accepted that allegation as true but irrelevant because it was. Would that be usual for a SWAT team to come out for a trespass call? I don't think so, Your Honor. I've been told there actually is not anything called a SWAT team for the County of Hawaii Police Department. I mean, I think there are officers that handle, you know, dangerous situations. And, you know, to give a little context, I mean, counsel for the private defendants might be able to give a little bit more context. But my understanding was that this was a large group of people that was entering, you know, a closed area. And there were other people on the other side who were also there. So there was a concern that I believe that there was going to be some kind of a large confrontation. But this all happened in November of 2013? Correct. And, you know, I guess bringing back, you know, the court's comment about statute of limitations, you know, I just want to direct the court's attention to footnote four of the court's final order in this case. This is ER 13. And it states that other than her claim of malicious prosecution, plaintiff does not contend that any other possible claim against the county defendant is timely under section 1983. Therefore, the court does not address any other such possible claim. Which order are you referring to, counsel? This is the order granting in part and denying in part? Correct. Okay. And this is page 10 of that order. And, you know, so the court found that... Let's say that's a record, counsel, because I don't see that page 10 of that order. What's the excerpt of the record? ER 113. Okay. Volume 1, page 13. It's the ER 13. 13. ER 13. Okay. And, you know, this is consistent with the argument below. Appellant did not argue that any other claim was viable except for the malicious prosecution claim. So the court only evaluated that argument. And the court found that they did have a viable malicious prosecution claim. Appellant did have a viable malicious prosecution claim based on McDonough v. Smith, which was a case that was decided after briefing in this case. You know, there might be a little confusion about where this case came from. The court apparently found it on its own after briefing was completed. And it does indicate that where there's fabricated evidence, the statute begins to run when criminal proceedings against the claimant have terminated in his or her favor. You know, and as I was stating, the trespassing charge against the appellant was ultimately dismissed on speedy trial grounds. Appellant presented conclusory statements suggesting that the police department was biased against the appellant and her faction. But if you look at the complaint, Officer Cho is first mentioned because he was the requested to meet with the appellant's sister to discuss a criminal assault and battery case that the county prosecutor was bringing against a member of the opposing faction. And frankly, it's generous to call this malicious prosecution. Cho was not a prosecutor. He filed a police report that was allegedly false. Whether that even sounds in malicious prosecution, I'm not sure. But the district court treated it as such, which was probably favorable to the plaintiff and then explain why the claim, why the elements of that claim were not met. And that's kind of where we've been left. Correct. Yeah. And I mean, as the court, I'm sure is aware there is a case law that says that a prosecutor filing a criminal complaint is presumed to exercise independent judgment. And this is cited in our answering brief. And at that point, it breaks the chain of causation and immunizes the officers is what the case law says. And this is Newman versus County of Orange Ninth Circuit case. Can I just ask a question as to whether, does the record reflect that this schism within the church, if I can use that word, was well known on the island or in the area? The church. I, I don't know if the record reflects that in and the private, private defendant's counsel can probably answer that question better than I could because, but it is a small community and I'm sure it was, you know, relatively well. Counsel, what's your response to opposing counsel's position that the malicious prosecution and other claims were so intertwined that they all should be considered timely? And, you know, I think the, the difficulty is that this argument wasn't made the law, you know, so our argument is that that argument was waived. You know, this is why the judge made the finding that he did in footnote four was because the appellant didn't make that argument. Well, this is an issue of law that we can exercise our discretion to decide. If we exercise our discretion to decide that point, what would your position be? You know, I agree with, with, you know, the things that the court was saying. I believe that the statute would have run on these other issues because the claim was complete at that time back in 2000, in November of 2013. And this is consistent with Wallace v. Cato, which says that when a party has a complete and present cause of action, they should bring a claim. And, you know, for these other issues that are not, that are not directly related to their malicious prosecution claim, you know, for example, intimidation, they could have brought these claims back in 2013 or within two years of 2000, November, 2013. All right, counsel. You've exceeded your time. Ms. White. Ms. White, I assume that you understand that if you have a case in court, you should be in the courtroom. I'm sorry. I spoke to the staff, and they said it was okay to sit outside, and I was number four, and I thought that it had, I had more time. So I apologize very much. I— Maybe that advice shouldn't be taken in the future. You probably should sit in the courtroom until— Yeah, yeah, I understand. I just— Don't like to go hunting for attorneys. Oh, I understand, and I never would have done that had I thought that I didn't have as much time as I did. Apologies. Good morning, Your Honors. May it please the court. My name is Lockie White, and I represent the private defendants in this matter. Pastor Bobby Maycomber, his wife, Thelma Maycomber, Leona Grace, Travis Leinonen, and the heirs and assigns of Daryl Grace, who has recently passed away. I'm still waiting for the death certificate. It's recent enough. I still need to inform the court formally. I know that you have all read the briefs and you have heard the prior arguments, and since our time is limited, I want to start and see if there's any questions that you have before I begin with prepared statements. Is there anything in particular that you were wanting to ask about the private defendants, or shall I just get started? Why don't you begin, and we'll decide. Okay, sounds good. So I just wanted to speak in, specifically in relation to the questions that have been asked today by your honors. First of all, there's many statements that aren't in the record or facts that wouldn't be appropriate for me to explain, but there are also statements that are provably false that are in the public record that I believe you can take judicial notice of. And some of the statements that are made today that I don't have in the record to point to that are false that I'm just going to say straight. Why were your clients properly dismissed from this case? What's that? Why were your clients properly dismissed from this case? You're about to talk about statements or comments outside the record. Those are difficult for us to look to because they're not in the record, but your client prevailed below, and so was the district court's decision correct? Yes, the district court's decision was correct. The dismissal, if we look at the wrongful prosecution, that's purely not against our client, and that is the major issue in the case that has to do with the statute of limitations and what they're trying to tie back. And that dismissal was based on a right of the failure to have a speedy trial. It wasn't a dismissal saying that there was no trespass. And the other side is saying there's a denial of freedom of association to attend a meeting, but what about my client's freedom to associate and the right to refuse service to people that are not behaving themselves in church? So I do believe that there's no absolute unfettered right that is constitutional to go to a church ground at any time that's absolute. So that speaks to this other fact that they keep saying is that there's a continuous violation, and there's never been a continuous violation. There was just those single incidents, and we've had a facility-sharing agreement since. There's been no limit on the grave sites. So it's shocking to me that these statements keep getting made to judges when they're truly false. Is there other litigation between these factions that's ongoing, like the state court or elsewhere? What's the nature of that litigation? The nature of that litigation, it started out before this case, and it was for the injunction order to have access to the church grounds, which is what should have happened before the other side went and climbed over the rock wall and tried to force access. And so then they went to the state court and tried to get injunctive relief, and the court did not grant the injunction. And so my clients still have possession. And then that state court case basically got dismissed, and then they brought in the county because it was being dismissed based on their inability to include these constitutional claims that they were making. And the government actors, they brought in the government actors. The government actors were moved to federal court. So for a long time, it was on a track where the district court had both cases. And so all of the settlement conferences and everything that's been happening has been happening on the district court level with both cases. And so unfortunately, your honors don't have the record of the second case. So it's not the depth of knowledge that was necessarily there. The second case is a state court case? What's that? The second case is a state court case? It's a state court case that was removed to federal court and then remanded back several years later. So now it's back in state court. It's still ongoing? And it's still ongoing, yes. And I just think it's, if there was something that, you know, was more than an unlikely speculation, I think the state court, unless they're a part of the conspiracy too, would have granted some, you know, relief by now. But they haven't. And the plaintiffs have failed to allege any invidiously discriminatory motivation that's required. There's no racial or class-based animus. There's no intent to deprive of equal protection of the law. They admit that the dispute on the other side is the appellant's sister. And so they're both the same race. They're the same religion. Can I ask you the same question? Yes. Was this dispute fairly well known in the community, in the church? Yes. Yes. And it's a very historic church. So that was, that's really ultimately, you know, I have to stop myself from speaking too much because it's not necessarily in the record. But yes. And I think that the key to this all, we don't even need to get into these detailed technical discussions when we just look at the basis of plausibility. And, you know, plausible means that there must be some real reason for supposing that the statement is true. And reasonableness is built into the plausibility standard. And the mere possibility of misconduct is not enough to prevent dismissal. And in this appeal, the appellant incorrectly asserts that the complaint facts as pled must be taken as true by this court. But that's false because the assumption of truth not only must be plausible, it also can't be legal conclusions. And so saying this is evidence of authority is a legal conclusion that the district court was right in making sure, is this truly authority? Is there, was there a legal conclusion that this person did not belong there or did belong there? And so, you know, appellant is making the spectacular claim that she is the rightful leader of Kahikolu Congregational Church, that somehow she was appointed to be that leader, regardless of what the congregation wants, and that the police conspired to block her from serving. But the court can take judicial notice of the fact that there was a governance dispute at the church and that such disputes are usually resolved in an orderly fashion, even if it means that the lawyers need to go to litigation. But the appellant admits that her approach to resolving the dispute was to jump over a rock wall and try and force her way into locked church grounds rather than resolve the dispute using civil process. So it's more plausible than not that the police were just doing their job trying to keep public order. And the appellant offered absolutely no specificity or evidence of any actual conspiracy short of an alleged familial relation between the codependents. Appellant admits to having pursued dangerous self-help measures, including personal and physical confrontation with the church congregation by facing off in person on the church grounds in the night in question. This is not disputed. It is reasonable for the police to be called in the face of such aggression. And an injunction from the state court in a separate lawsuit involving this was denied. This speaks volumes. In the factual scenario as pled by appellant, if it were at all plausible and the appellant were entitled to the assumption of truth by this court, which is much more removed from the facts on the ground than either the state court or the district court here locally, there would be an injunction order. The trial court would know what's going on on the ground. But if appellant's version of the events are true, she would have possession of the church by now. But she does not. Unless the state circuit court is also a part of this conspiracy, the court can be rest assured that the facts as pled in this case are not entitled to the assumption of truth because they are not only implausible, they are provably false. This is a case, excuse me, of a litigant who feels entitled to what she's calling lifetime membership. All right, counsel, you've exceeded your time. Thank you. All right, one minute for a vote. Thank you, Your Honor. Judge Brest, to address a question you asked about the similar nature of the two cases, the companion case, Dr. Andrade is not a plaintiff in that case. There's just... That's just a case between the two different factions, if you will? Yes, Judge. Okay, thank you. The argument that the county made relying on the footnote from the district court saying we did not address the statute of limitations argument other than malicious prosecution is incorrect. ER00274 and particularly 282 to 294 contains 13 pages of argument in our memorandum in opposition to dismiss the First Amendment complaint where we argue the statute of limitations related to section 1983. Regarding when the plaintiff has a complete and present cause of action, I think you should consider the fact that if you are saying that Dr. Andrade had to file a complaint alleging, say, First Amendment violation under 1983 and then wait for her criminal complaint to be dismissed, we're talking about multiple lawsuits. That's just totally impractical. That's another reason why you cannot separate these causes of action because they're so intertwined. And there are other issues I'd like to address, but I understand my time is up. All right, thank you, counsel. Thank you to all counsel for your arguments in this case. We understand all of your arguments and will give them serious consideration. The case just argued is submitted for decision by the court.
judges: SCHROEDER, RAWLINSON, BRESS